KING et ux. v. WHATLEY.

No. 2825.

Court of Civil Appeals of Texas. Eastland.

Jan. 12, 1951.

Rehearing Denied Feb. 9, 1951.

L. D. Hawkins, Breckenridge, Sterling Williams, Snyder, for appellants.

C. O. McMillan, Stephenville, for appellee.

COLLINGS, Justice.

This suit was brought by C. B. Whatley against R. H. King and Evalyn King to recover upon a written contract by which the latter agreed to sell and the former agreed to buy a ranch and certain personal property, including cattle, thereon. In the first count of his petition as plaintiff, Whatley sought specific performance of the contract to recover the real property and to recover so much of the personal property as was available. Some of the personal property was alleged to have been disposed of and as to such property, he sought damages. In his second count, Whatley prayed that in the event the court found he was not entitled to a judgment for the title to the personal property and for specific performance of the contract to convey the real property, that he have judgment against defendants for their breach of such contract by reason of the increase in value of the land and personal property and in addition, asked judgment for the sum of $5,000.00 alleged to have been paid by him to defendants King and wife as an advance payment on the purchase price for said property. King and his wife alleged that the land was their homestead as to which no specific performance could be had; that the contract was entire and not severable and, therefore, no part thereof was enforceable.

Judgment was rendered in the trial court sustaining the defense of homestead and denying a recovery of the land, but the court found that under the contract and bill of sale and other instruments in writing, plaintiff Whatley had title to and was entitled to recover certain of the personal property including cattle and awarded damages as to other of the personal property which King had disposed of.

Defendants R. H. King and wife have appealed from the judgment of the trial court insofar as it awarded to Whatley the title to any of the personal property or damages for property disposed of. C. B. Whatley has appealed from that portion of the judgment denying specific performance of the contract to convey the land. The parties will be here designated as plaintiff and defendants, the capacity in which they appeared in the trial court.

The following is a copy of the contract between the parties as it appears in the record:

"The State of Texas
County of Scurry

"This Agreement between R. H. King and wife, Evalyn S. King, of Scurry County, Texas, hereinafter called 'Vendor' and C. B. Whatley of Scurry County, Texas, hereinafter called 'Purchaser', Witnesseth:

"1. That Purchaser has agreed, and does hereby agree, to take by conveyance from vendor a certain tract of land, situated in Scurry County, Texas, and described as follows:

"(a) All of the North one-half (N½) of Section No. 547 In Block No. 97 of the H. & T. C. Ry. Co. Surveys, containing 324.5 acres, more or less; and

"(b) All of Section No. 568 in Block No. 97 of the H. & T. C. Co. Surveys, containing 650 acres, more or less.

"From said conveyance there shall be excepted all of the oil, gas and other minerals in and under the aforesaid land with rights of ingress and egress for all necessary, usual and proper purposes in connection with the exploration for development, drilling, producing, saving, transporting and marketing such minerals or either of them; also, said conveyance shall be subject to the outstanding oil, gas and mineral lease in favor of Imperial Agency Corporation and assigns, and vendor hereby retains all rentals, royalties and revenues inuring to lessor under said lease or leases.

"2. In consideration of such conveyance, Purchaser agrees to pay the sum of Thirty-five thousand, one hundred dollars ($35,100.00) upon delivery of said deed, less the outstanding indebtedness held by the Federal Land Bank of Houston (estimated as being now approximately Six thousand, two hundred sixty-three and 50/100 Dollars ($6,263.50) which Purchaser shall assume. Taxes for the year 1949 shall be prorated as of the date hereof.

"3. Contemporaneously herewith, Purchaser has paid to Vendor the sum of Five

thousand Dollars in cash, receipt of which is hereby acknowledged by Vendor, which said sum is earnest money applicable to the entire consideration as provided in this agreement, including the amounts hereinafter stipulated for livestock and other personal property to be conveyed by bill of sale.

"4. Vendor agrees that on or before sixty days from this date, and contemporaneously with the payment of the remainder of the considerations hereinabove provided, and as hereinafter provided, they will deliver to Purchaser a good and sufficient deed, executed by Vendors and duly acknowledged by them granting and conveying to Purchaser, his heirs and assigns the above described property and containing a covenant of general warranty under the limitations and qualifications above stipulated.

"5. Vendor agrees to deliver to Purchaser a complete abstract of title, certified to date, not later than October 1st, 1949, which Purchaser shall have examined promptly, and if title objections are found, Vendor shall be furnished with a written statement of such objections with indicated requirements, and Vendor shall cure such objections as soon as practicable, it being understood that the entire transaction is to be closed and delivery consummated within sixty days from the date hereof.

"6. If title is shown to be good and marketable, and deed tendered with possession, Purchaser shall pay over the remainder of the consideration; but if Purchaser should make default, the earnest money shall be retained by Vendor as full liquidated and agreed damages, and this contract thereupon shall terminate; but if title is not shown to be good and marketable, vendor shall repay the earnest money to Purchaser, and the parties mutually released from this agreement.

"7. The deed as provided for above shall remain in escrow in the Snyder National Bank at Snyder, Texas, pending the consummation of this trade, accompanied by a copy of this agreement.

"8. As a part of this agreement, Vendors obligate themselves to sell and deliver to Purchaser by Bill of Sale, effective as of even date herewith, the following described personal property, to wit:

"17 White-face cows, and 17 – 1949 Spring Calves, all valued at........$3,825.00
"11 Dry White-face cows; 3 White-face cows with baby calves, and 2 Jersey cows, all valued at... 2,800.00
"6 White-face yearling heifers, Valued at............................ 750.00
"1 Registered White-face bull, valued at .............................. 225.00
"1 Sorrell mare, 7 years old, valued at................................ 225.00

Total valuation......$7,825.00

and
1 Two-wheel stock trailer; 1 27 ft. air motor steel windmill tower; Sundry Cedar posts, wire, etc.

"All being situated on the foregoing described land in Scurry County, Texas, and heretofore inspected and identified by the parties hereto.

"9. Purchaser shall have the right to sell and dispose of the above described live-stock and its increase, but pending the completion of this trade, the sums realized from such sales shall remain in escrow as a joint account in the Snyder National Bank at Snyder, Texas, it being understood that in consideration for such bill of sale and additional to the consideration for the real estate above described, Purchaser shall pay to Vendor the _ _ _ (torn) seven thousand eight hundred twenty-five ($7,825. (torn) - - - (torn off) the time of delivery of the deed fi - - - eina - - - (torn off)

"In Testimony Whereof . . . (torn off)
September, 1949.
(torn) - - ng - - (torn) - - -

Ven - - rs
tley ————
(torn off)          aser"

The evidence shows that contemporaneously with the execution of the contract, King and wife executed and acknowledged their general warranty deed conveying the land to plaintiff and that King also executed a bill of sale to the personal property. By agreement of the parties, the instruments in question were delivered to the Snyder National Bank to hold while abstracts of title

were being examined. At the same time C. B. Whatley paid R. H. King $5,000.00 to be applied on the purchase price of the property. Thereafter, on or about October 15, 1949, King and Whatley met on the streets in Snyder and at King's request, went to the bank for the purpose of examining the instruments in question. When King received the papers for examination, the evidence discloses that he began to tear them up and threw them into the waste basket, and stated that the deal was "over with." The instruments have been re-assembled and pasted together and in such condition were introduced in evidence.

On November 1, 1949, C. B. Whatley paid into the bank the sum of $31,661.50 to be placed in the escrow account and at the same time delivered a letter to the bank and sent a copy thereof, by Registered Mail, to R. H. King, which stated that such payment was made in compliance with the provisions of the contract for the conveyance of the real estate and personal property and instructed the bank to pay such sums to R. H. King and wife in the event they conveyed and delivered the property in question according to the terms of the contract and further advised that suit was being filed against R. H. King and wife for specific performance of such contract.

Plaintiff Whatley contends that the trial court erred in not requiring defendants to specifically perform their contract to convey the real estate, a portion of which was their homestead (1) because the right to repudiate belonged to the wife only and the evidence showed that the husband and not the wife, attempted to repudiate the contract, and (2) because the undisputed evidence showed that the contract and warranty deed to the land were both signed and acknowledged by King and his wife and placed in escrow to be delivered upon the payment of the balance of the agreed purchase price to the escrow agent and that plaintiff Whatley has fully performed and executed such provisions of the contract.

█ Under the laws of this State, a married woman may, at any time before title passes, retract a contract to convey her homestead. Jones v. Goff, 63 Tex. 248;

Pickens v. Bacle, 129 Tex. 610, 104 S.W.2d 482; De Bell v. Schuety, Tex.Civ.App., 65 S.W.2d 413; Jackson v. Scoggins, Tex.Civ. App., 220 S.W. 302.

██ Where a deed to land and a contract for the sale thereof are signed, acknowledged and placed in escrow, title does not pass until the deed is delivered by the escrow agent to the grantee according to the escrow agreement. Even though Whatley may have fully performed his part of the contract by depositing the required amount with the escrow agent, no delivery of the deed has yet been made and title has, therefore, not passed. Mrs. Evalyn King repudiated the contract by her pleading filed in this cause in which she asks that the contract for the sale of her homestead be held void and unenforceable. The trial court did not err in denying specific performance of that portion of the contract calling for the conveyance of real estate.

█ The question next arises as to whether Whatley was entitled to recover the personal property on hand including cattle described in the contract and to recover damages for so much of the property as has been disposed of. Defendants urge in several points that the court erred in holding that Whatley was entitled to so recover. They insist that by the terms of the agreement they did not convey title to the personal property but only contracted to do so; that the contract is entire and not severable and that since the portion thereof providing for the sale of the homestead has been repudiated and is unenforceable, that the entire contract falls and no part thereof may be enforced.

Plaintiff Whatley contends that the contract and bill of sale had the effect of vesting title to said personal property in him at the time of the execution thereof and that he has fully performed all things required thereunder. He further contends that in any event the parties, by their own acts as found by the jury, completed the delivery of the personal property at the time of the execution of the contract and thereby vested title in him.

If the contract were ambiguous and uncertain concerning the intention of the par-

ties to presently convey title, then the finding of the jury tending to establish "an authorization to take charge" of the property might be a controlling issue. In our opinion, however, the contract is not ambiguous but, on the contrary, indicates an agreement to sell the property rather than an intention to then and there convey title thereto.

The portions of the contract relied upon by Whatley to show an intention to pass immediate title to the personal property in question are as follows: "As a part of this agreement vendors obligate themselves to sell and deliver to purchaser by bill of sale, effective as of even date herewith * * * (the personal property)" and "purchaser shall have the right to sell and dispose of the above described property and its increase."

The above quoted provisions considered alone and apart from the rest of the contract may not clearly show whether the parties intended a present conveyance of the personal property or merely a contract to convey in the future. When, however, such provisions are considered together with the contract as a whole they appear to be a part of a contract to convey subject to the completion of the trade according to the terms of the contract rather than an indication of intention to presently pass title. This purpose is clearly indicated by other provisions of the contract, some of which are as follows: "Pending the completion of this trade the sums realized from such sales shall remain in escrow * *" and " * * * it being understood that the entire transaction is to be closed and delivery consummated within 60 days * * *" and "but if title (to the land) is not shown to be good and marketable, vendor shall repay the earnest money to purchaser and the parties mutually released from this agreement." Since the contract is not ambiguous on this question, its provisions are controlling as to the intention of the parties. The fact that King may have authorized Whatley to "take charge of the livestock and other personal property" as found by the jury, was not effectual to contradict the legal effect of the unambiguous written contract. It was not even admissible to be considered for that purpose. Southern Gas & Gasoline Engine Co. v. Richolson, Tex. Com. App., 216 S.W. 158; Milliken v. County of Callahan, 69 Tex. 205, 6 S.W. 681; Reynolds v. McMan Oil & Gas Co., Tex.Com.App., 11 S.W.2d 778; Benskin v. Barksdale, Tex.Com.App., 246 S.W. 360; Hart v. Light & Jones, Tex.Com.App., 245 S.W. 671. In our opinion the court erred in holding that plaintiff Whatley had title to the personal property in question.

We come next to a consideration of the defendant's contention that the contract in question is entire and not severable and, since that portion of the contract calling for the conveyance of the homestead is unenforceable, no part thereof may be enforced. If the contract is entire and not severable, defendants are correct in saying that the entire contract must fall. Upson v. Fitzgerald, 129 Tex. 211, 103 S.W.2d 147; Cheney v. Coffey, 131 Tex. 212, 113 S.W. 2d. 162 (Com.).

An examination of the contract discloses two persuasive indications that it is severable. (1) The subject matter of the contract is divisible and (2) the consideration is apportioned. These qualities are consistent with and indicative of a severable contract but are not conclusive on that point. The intention of the parties is the controlling consideration. Smith v. Crosby, 47 Tex. 121. Such a contract considered alone or in connection with the nature of the subject matter or the acts of the parties may evidence an intention for an entire and indivisible contract. 17 C.J.S., Contracts, §§ 333, 334, pages 789, 790; 10 Tex.Jur., page 325; Read v. Gibson & Johnson, Tex.Civ.App., 12 S.W.2d 620, 622; Markham Irr. Co. v. Brown, Tex.Com.App., 292 S.W. 863, 866, 867; Burkhart v. Brownfield, Tex.Civ.App., 33 S.W.2d 885, 887. In spite of the above mentioned evidences of a severable contract we believe that an examination of the entire instrument indicates a clear intention that it should be entire and not severable.

The subject matter of this contract is a tract of land, certain cattle and other personal property, all of which, ac-

cording to the contract, is situated on the land. From the terms of the contract itself, it is apparent that the land and the personal property together constituted one farm and ranch unit. The agreement for the sale of all the property, the deed to the land and the bill of sale to the personal property, were placed in escrow together. The $5,000.00 in earnest money paid by Whatley was, under the contract, applicable to the entire consideration, including the livestock and other personal property as as well as the real estate. Whatley had the right under the contract to sell the livestock but the sums received therefor were required to remain in escrow pending completion of the entire transaction. It was agreed that Whatley should pay King $7,825.00 for such personal property at "the time of the delivery of the deed"; that if title to the land was not shown to be good and merchantable, King should repay the earnest money and the "parties mutually released from the agreement;" that if Whatley should make default the earnest money should be retained by King as agreed damages and the contract thereupon should terminate.

The above provisions of the contract make it apparent that the parties contemplated and were concerned only with the sale of the entire subject matter of the contract. It was clearly not intended that there should be a sale of either the land or the livestock and other personal property unless there was a sale of both. If the Kings failed to show good title to the land the parties were "mutually released," and if Whatley "should make default" the contract terminated. A default by Whatley as to either the land or the personal property would have been equally effective to terminate the entire contract. In our opinion the contract was entire and not severable. Since the provision for sale of the homestead has been repudiated and is not enforceable, the provisions for the sale of the personal property likewise fall and cannot be enforced. It may be noted that even if this contract were severable the judgment granting recovery of the personal property could not be sustained on the theory that plaintiff Whatley was entitled to specific performance of the provisions of the contract to convey same. An unsurmountable obstacle to Whatley's right to recover the personal property under such theory is the well established general rule that contracts for the conveyance of personal property will not be specifically enforced. There was no showing that any of the personal property here involved was of such a nature that damages for nonperformance would have been inadequate to compensate therefor. Casey v. Camp, Tex.Civ.App., 280 S.W. 266 (Writ Dis.); Hutcheson v. King, 37 Tex.Civ.App. 151, 83 S.W. 215, 217; Bay City Irr. Co. v. Sweeney et al., Tex.Civ. App., 81 S.W. 545 (Err.Ref.); 38 Tex.Jur., pg. 732.

That portion of the judgment denying a recovery of the land is affirmed. The portion granting Whatley a recovery of certain personal property and damages as to other personal property, and in all other respects, is reversed and remanded for another trial.