C. H. CHAPMAN, Appellant,

v.

TYLER BANK & TRUST COMPANY, Appellee.

No. 155.

Court of Civil Appeals of Texas.

Tyler.

Oct. 14, 1965.

Rehearing Denied Dec. 2, 1965.

William F. Billings, Fanning, Billings, Harper, Pierce & Gilley, Dallas, Ben Johnson, Johnson, Hathaway & Jackson, Tyler, for appellant.

W. Dewey Lawrence, Lawrence & Lawrence, Tyler, for appellee.

MOORE, Justice.

Tyler Bank & Trust Company, a banking corporation hereinafter referred to as the Tyler Bank, brought this suit against Robert C. Smith and J. Breyer, Jr., individually and as a partnership doing business as Smith & Breyer, and C. H. Chapman, the appellant herein. Plaintiff's petition alleges that on the 30th day of May, 1962, the partnership of Smith & Breyer executed and delivered to Tyler Bank & Trust Company a promissory note in the principal sum and amount of $25,000.00 payable 45 days from the date thereof, and that the sum of $17,057.09 was due, owing and unpaid. The note was secured by an assignment by the said Smith & Breyer of an account receivable from appellant, C. H. Chapman, which said assignment was in writing and was executed and delivered to the bank. The bank alleged that the appellant Chapman had notice of the assignment of the account, but that he had failed to make the payment of the amount due and owing the partnership of Smith & Breyer in the sum and amount of $17,057.09 after allowing a credit for $8,442.91 which appellant had paid by reason of the assignment. Smith & Breyer failed to answer or make an appearance and the court entered interlocutory judgment by default against them. Appellant answered and denied generally the allegations of the petition.

The cause of action against Chapman was submitted to the court, without a jury, and at the conclusion thereof, the court rendered judgment against appellant Chapman for $17,057.09 from which judgment he has perfected this appeal.

Upon request of the appellant, the court filed findings of fact and conclusions of law, in which the court found that Smith & Breyer had assigned the account to the bank on May 30, 1962; that C. H. Chapman was advised in person of the assignment within a few days following May 30, 1962, and by telephone prior to August 27, 1962, and was further advised in writing by the plaintiff through a letter deposited in the United States mail on January 24, 1963, which notice was acknowledged by an agent of the appellant, C. H. Chapman, by a letter dated January 31, 1963. At all times prior to February 5, 1963, appellant was indebted to Smith & Breyer upon the assigned account for an amount of not less than $17,057.09, and that Smith & Breyer had not assigned the account to any other persons or company. The court concluded as a matter of law that appellant was on notice of the assignment at a time when he owed Smith & Breyer the sum of $17,057.09 on the assigned account and was thus obligated to pay Tyler Bank & Trust Company the sum of $17,057.09 with interest thereon from the date of judgment.

In his brief appellant admits that the facts found by the court are "essentially correct and uncontroverted."

It is undisputed that on July 26, 1961, Smith & Breyer entered into a contract with Chapman for the purpose of drilling three test wells in the state of Michigan. The contract was in the form of a letter, the pertinent portion of which was as follows:
"We agree to drill a test well for oil and/or gas on the above three mentioned deals as specified in Humble Oil and Refining Company's farmout letter. Smith & Breyer will turnkey the drilling of the Gun Prospect for $28,000.00 to the casing point. The Wayland Prospect will be turnkeyed to the casing point for $28,000.00, and the Calhoun County Prospect will be turnkeyed for $34,500.00 to the casing

point. Smith & Breyer will have a ¼ carried interest in the Gun and Wayland Prospects to the casing point. Smith & Breyer will have a ⅛ carried interest to the casing point on the Calhoun County Prospect. * * *"

A turnkey price was agreed upon as to each well. It was later determined by the parties, however, that the Gun Prospect well could not be drilled, and the parties thus orally agreed upon the drilling of the Pike well. This well was to be drilled to a more shallow depth than the Gun well and the consideration for drilling this well was $25,500.00 rather than $28,000.00.

Prior to the time Smith & Breyer obtained the loan at the Tyler Bank, they borrowed $36,000.00 from the Texas Bank & Trust Company of Dallas, and assigned as collateral the account receivable from Chapman for the drilling of the two wells other than the Pike well. Appellant had notice of this assignment prior to the time he had notice of the assignment of the Pike account to the Tyler Bank. He admitted that he knew that none of the account covering the Pike well was assigned to the Dallas Bank, and further admitted that he was not entitled to any offset or credit against the Pike account.

On or about the 15th day of August, 1962, when the Smith & Breyer note was approximately thirty days delinquent, W. A. Pounds of the Tyler Bank called Chapman and requested payment on the assignment. Appellant advised that he would have to check his books and determine the amount due and owing Smith & Breyer. Thereafter, the bank received two checks drawn upon Chapman and endorsed by Smith & Breyer totaling $8,442.91 which reduced the amount due on the note to $17,057.09.

Appellant then advised the Tyler Bank that nothing more was due and owing Smith & Breyer. Appellant's books and record, however, showed that he was indebted to Smith & Breyer in the amount of $30,442.38.

On January 24, 1963, while the appellant's books continued to reflect such indebtedness, the attorneys for the Tyler Bank wrote appellant again advising him of the assignment and requesting payment. Receipt of the letter was acknowledged.

Thereafter, on February 5, 1963, when the Smith & Breyer note in the amount of $24,030.00 became due at the Dallas Bank, appellant, with knowledge of the assignment to the Tyler Bank, personally assumed the note at the Dallas Bank and charged the amount thereof to Smith & Breyer as an offset or credit on the amount due and owing them. He later paid the note.

Appellant seeks a reversal of the judgment predicating liability and has presented 5 Points of Error. In Points 1 and 3 he asserts that he should not be held liable to the Tyler Bank on the assignment because the uncontroverted evidence shows that the contract for the drilling of the three wells was an indivisible contract, not subject to assignment in part, and therefore since Smith & Breyer assigned the Tyler Bank only that portion of the account covering the "Pike" well, he was not obligated to recognize such assignment. We are not in accord with this contention.

■ It is generally held that any order, writing, or act, at least if communicated to the holder of the fund, directing his debtor to transfer to a named person any portion or all of particular funds in his possession, operates as an equitable assignment of the fund designated. 6 Tex.Jur.2d, page 427; Comer v. Floore (Tex.Civ.App.) 88 S.W. 246; Foley v. Houston Co-Op. & Mfg. Co. (Tex.Civ.App.) 106 S.W. 160. After notice of such assignment the debtor cannot pay money due on the account to a third person so as to deprive the assignee of his right. 6 Tex.Jur.2d page 436; Mitchell, Gartner & Thompson v. Young (Tex. Civ.App.) 135 S.W.2d 308.

■ The question of whether or not a contract is divisible or indivisible cannot be determined by any one test or rule of law.

The answer to the question depends primarily on the intention of the parties, and of course, the acts of conduct of the parties in treating the contract as entire or severable bears materially upon the question of construction. Simms-Wylie Co. v. City of Ranger (Tex.Civ.App.) 224 S.W.2d 265; 13 Tex.Jur.2d page 282.

■ A frequently used test to determine divisibility is whether or not the consideration for the agreement is apportionable. It is generally held that a contract is divisible where the part to be performed by one party consists of several distinct and separate items and the price to be paid by the other party is apportioned to each item. 13 Tex. Jur.2d page 283.

The solution to the problem appears to turn upon the question of whether or not the contract for the drilling of the wells is a divisible contract. In this connection the undisputed evidence shows that the Pike well was not drilled under the provisions of the letter contract but was drilled under a subsequent oral agreement after the parties determined that the Gun Prospect well, mentioned in the letter agreement, could not be drilled. Appellant by his own testimony admitted that the agreement to drill the Pike well was "entirely different" from the agreement to drill the Gun Prospect well mentioned in the letter. Moreover, he admitted that the account assigned to the Dallas Bank by Smith & Breyer was the account receivable for the drilling of the other two wells, and that none of the funds due and payable for the drilling of the Pike well was assigned to the Dallas Bank.

■ Although the trial court did not specifically find that the "Pike" contract was divisible and a separate contract, the judgment in favor of the Tyler Bank supplied the finding by implication and there being evidence of probative force in support thereof, such implied finding is binding upon the appellate court. Rule 296, Texas Rules of Civil Procedure; Williams v. Milliger (Tex.Civ.App.) 352 S.W.2d 794.

■ We therefore reach the conclusion that since the trial court found that the contract covering the Pike well was a divisible contract and subject to assignment and further found that appellant had notice of the assignment at a time when he was indebted to Smith & Breyer for a sum in excess of $17,057.09, he was legally obligated to make payment in accordance with the assignment and had no authority to pay the funds to the Dallas Bank and thus deprived the Tyler Bank of its right to the funds.

Appellant further contends that there was no liability on the assignment to the Tyler Bank because the contract provided that Smith & Breyer was to have a carried interest in the wells which meant that Smith & Breyer were to assume their proportionate share of the expenses for the drilling of the wells. He therefore contends that since Smith & Breyer owed him, he was entitled to an offset for their proportionate share of the expense, and that the payment of the funds to the Dallas Bank on behalf of Smith & Breyer was nothing more than the payment of the funds representing the amount of the offset.

We have experienced difficulty in following this contention because of the following statement in the appellant's brief:

"* * * *After such offsets,* he owed $24,267.45 to Smith and Breyer as of December 31, 1962 according to Schedule 1 of the Auditor's report. He paid this essentially on February 5, 1963 by assumption of the account owed by Smith and Breyer to the Texas Bank and Trust Company of Dallas." (Emphasis supplied.)

It thus appears that even after taking all the offsets due and owing to him, appellant admits that he still owed Smith & Breyer the sum of $24,267.45 after notice of the assignment to the Tyler Bank.

■ At any rate, appellant failed to plead that the account was subject to an offset and therefore we think such defense

## 148

was waived. Rule 94, T.R.C.P.; American Nat. Ins. Co. v. Fox (Tex.Civ.App.) 184 S.W.2d 937.

By Point 2 appellant contends that the court committed reversible error in refusing to consider appellant's testimony to the effect that prior to notice of the assignment to the Tyler Bank he had personally endorsed the Smith & Breyer note at the Dallas Bank, thus subjecting himself to liability thereon, and thereby giving him a right to use funds due them in payment of the note. Alternatively, he asserts that the court committed error in refusing to allow him to re-open the evidence and offer the original of the endorsed note. In this connection, the record reveals that while being cross-examined by the Tyler Bank's attorney, appellant testified, without objection, that he had endorsed the Smith & Breyer note at the Texas Bank prior to the time he had notice of the assignment of the Tyler Bank. Later, while appellant was being questioned by his own attorney, he again attempted to testify that he had endorsed the note, at which time the bank objected on the ground that it was not the best evidence and requested the court to strike the previous testimony in that regard. The objection was sustained and the request to strike was granted.

We fail to find any error in connection with this assignment. Appellant's oral testimony concerning the endorsement was clearly subject to the objection that it was not the best evidence. Neither do we believe that the trial court abused his discretion in refusing to allow appellant to re-open the evidence for the purpose of introducing the endorsed note. In order to properly raise a newly discovered evidence point, there must be a showing of lack of notice of the evidence until after the conclusion of the trial and also that such could not have been discovered prior to trial by the use of due diligence. New Amsterdam Casualty Company v. Jordan, Tex., 359 S.W.2d 864. Having been an endorser upon the note, appellant is not in a position to now deny that he did not know of the existence of the note prior to trial. Furthermore, the only purpose in offering the note and the endorsement was to establish a defense in the nature of payment or offset. As pointed out before, there were no pleadings to support such an affirmative defense and appellees having objected for such reason, there was no abuse of discretion in refusing to allow appellant to re-open the evidence for this purpose. Rule 94, T.R.C.P.; Gresham v. McElroy (Tex.Civ. App.) 309 S.W.2d 84.

Moreover, appellant has failed to properly preserve the point. The alleged note was not offered in evidence nor brought forward in the record by way of a Bill of Exception. Without the note, we are unable to determine whether there was any abuse of discretion in refusing to allow a re-opening of the evidence. Gulf Paving Co. v. Lofstedt, 144 Tex. 17, 188 S.W.2d 155.

Appellant requested the court to make additional findings of fact and conclusions of law. The court complied with this request and made several additional findings of fact. Those which were refused and of which complaint is now made are thought to be either immaterial or in conflict with other findings of fact made by the court. The requested conclusions of law contain nothing more than a request for legal conclusions contrary to the judgment and hence were properly refused.

Appellant not having discharged his burden of establishing that the failure to make the additional requested findings was error, these points are overruled.

The judgment of the trial court is affirmed.