H. Doyle ST. JOHN, d/b/a Doyle St. John Contractor, Appellant,

v.

Marcus D. BARKER, Individually and d/b/a Barker Cabinets, Appellee,

v.

James D. DURHAM, Jr., Appellee.

No. 9359.

Court of Appeals of Texas, Amarillo.

Aug. 17, 1982.

Rehearing Denied Sept. 13, 1982.

C.J. Humphrey, Amarillo, for appellant.

The Wolfram Law Firm, Walter P. Wolfram, Amarillo, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

In this suit for breach of contract and deceptive trade practices stemming from a home remodeling project, appellant and contractor on the job, Doyle St. John, appeals from a $1,370.52 judgment entered in his favor by the trial court. St. John contends the judgment should have amounted to $28,617.73, and asks this court to reverse and render judgment for that sum. Additionally, appellee and cross-appellant James D. Durham, who contracted with St. John to have his home remodeled, appeals from the judgment entered against him. He raises various evidentiary contentions and also argues the jury's answers to certain of the special issues are irreconcilable. Durham urges this court to reverse the judgment and remand the cause for a new trial. For reasons hereinafter set forth, we agree with Durham's contention that a portion of the jury's verdict was against the great weight and preponderance of the evidence. We reverse that portion of the trial court's judgment and remand the case for a new trial on the issues hereinafter specified.

The contract between Durham and St. John was admitted into evidence. In pertinent part, it provided that all jobs must be approved by Durham before commencement, and that St. John would complete work in a "substantial and workmanlike manner." St. John hired Barker as subcontractor to build some cabinets for Durham. When Durham, dissatisfied with Barker's work, refused to pay St. John, St. John refused to pay Barker. Barker subsequent-

ly filed suit against St. John for $5,410.00 for labor and materials put into the cabinets, attorney fees, and interest. St. John answered by bringing Durham into the lawsuit as a third-party defendant and pleading for recovery over and against Durham. Additionally, the contractor filed against Durham a suit on sworn account pleading for recovery of an $11,974.02 balance due on the remodeling job, attorney fees and interest. Durham answered with a cross-action against St. John alleging failure to substantially complete the remodeling project, including the cabinets, and breach of warranty under the Deceptive Trade Practices Act.

At trial, St. John did not make an issue of his liability to Barker, concentrating instead on Durham's liability to him for the cabinet work. After trial, but before submission of issues to the jury, the trial court granted Barker's motion for judgment against St. John. St. John does not contest the propriety of the court's verdict against him. We sever that part of the action and affirm that portion of the judgment of the trial court.

Also after trial, but before submission of issues to the jury, the trial court granted St. John's motion for judgment against Durham on his sworn account of $11,974.02, attorney fees of $5,180.00 and interest as authorized by law. Durham does not contest the propriety of that action by the trial court.

Because they are depositive of this appeal, we proceed directly to consideration of cross-appellant Durham's points of error three and four. In cross-point three Durham alleges the jury's failure to find any damages in special issue 11, subparagraph 2 was against the great weight and preponderance of the evidence. In cross-point four he alleges error in failing to grant a new trial "when there was no evidence to support the jury's answer to subsection 2 of special issue eleven." We think logical continuity requires a discussion of cross-point four first.

█ Special issue 11(2), and the jury's answer to it, reads as follows:

Find from a preponderance of the evidence the reasonable cost of repairs, if any, necessary to complete the following areas of the Durham home in a substantial and workmanlike manner, if any, as represented by Doyle St. John it would be

2. The fireplace, north wall and mirrored shelves in the front room

<u>None</u>

Since issue 11(2) is an issue upon which Durham had the burden of proof, the effect of this point is an assertation that he established damages to the fireplace, north wall, and mirrored shelves as a matter of law. O'Connor, Appealing Jury Findings, 12 Hous. L. Rev. 65 (1974); Calvert, No Evidence and Insufficient Evidence Points of Error, 38 Texas L. Rev. 361 (1960). We are not referred to, nor do we find, any part of the record showing he laid a proper predicate for appeal on that point. *Rosas v. Shafer,* 415 S.W.2d 889, 890 (Tex. 1967); Calvert, No Evidence and Insufficient Evidence Points of Error, supra. Consequently, we will consider Durham's point of error four waived. *Diaz v. Deavers,* 574 S.W.2d 602, 607 (Tex. Civ. App.—Tyler 1978, writ dism'd).

█ We turn now to Durham's contention that the jury's failure to find damages was against the great weight and preponderance of the evidence, a point for which no predicate in the trial court is necessary. Tex. R. Civ. P. 279, 324. 4 McDonald, Texas Civil Practice § 18.14 (rev. 1981). In reviewing this point of error, we are required to consider all the record evidence relevant to the point being challenged. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We are not entitled to substitute our conclusions for that of the jury's, however, and if there is enough competent evidence of probative force to support the verdict, the jury's findings must be sustained. *Riley v. Crossley,* 383 S.W.2d 427, 428 (Tex. Civ. App.—Houston 1964, no writ). Moreover, it is not within our province to interfere with the jury's resolution of conflicts in the evidence, or to pass upon the weight or credibility of witness' testimony. *Benoit v. Wilson,* 150 Tex. 273, 239

S.W.2d 792, 796 (1951). With these standards and limitations in mind, we now proceed to examine the facts relevant to Durham's point of error three.

Durham testified that before he hired St. John to remodel his home, he and St. John toured the house and discussed the project, including Durham's quality expectations. He testified that the idea of converting the dummy fireplace on the north wall into a woodburner was St. John's; he and his wife did not initiate the project, although they approved it after St. John said it would cost only $800 to $900. Describing the present state of the fireplace, north wall, and mirrored shelves, Durham testified the mirrored shelves were compacting and the glass was breaking. Inside, the fireplace was tilting upwards, pulling away from the molding around it. The crown molding above the fireplace, Durham stated, was separating from it, and the mantle itself was visibly separated from the north wall.

Terrance Doane, Durham's architect, also testified concerning the extent of the damage inside. Outside, Doane said the fireplace chimney was tilting back to the north and pulling away from the roof latching on the outside. This separation was very recent because, according to Doane, the old paint on the house could be seen in cracks around the eaves. In Doane's opinion, the northward tilting has been caused by an overloaded foundation. The deterioration, he stated, would continue unless the fireplace was torn down and entirely rebuilt.

A.L. Prutsman testified as to the cost of repairs. He stated he does major repair work, and was hired by the Durhams to estimate the expense of repairing the fireplace and related areas, although he did not expect to be hired by them to complete the work. His examination revealed that the fireplace chimney was pulling north, away from the house, and taking the north wall with it. This pulling action in turn caused the fireplace to separate from the inside wall and the hearth to rise up and pull away from the molding. The compression of the glass shelves was caused by the rising action of the hearth. Extensive repairs to both the inside and outside were necessary, Prutsman declared. The fireplace stack should be rebuilt, the hearth reset, and the mantle reset and repainted. Prutsman estimated the cost of making repairs to be about $8,000.00.

Johnny O'Dell testified he provided glass for the mirrored shelves. He stated the north wall was pulling away from the mirrors, causing them to crack, break and consequently chip the shelves below. The mirrors, O'Dell said, were compacted together, and to be taken apart, must be removed and cut. He estimated the cost of replacing and rehanging the mirrors would be between $850.00 and $900.00.

Doyle St. John testified the original plans did not include converting the dummy fireplace into a woodburner. The Durhams decided to convert it well into the remodeling project, so St. John worked up two cost estimates. The first estimated the cost of using a firebox and modifying the chimney at $1,200.00 to $1,300.00. The second estimated the cost of rebuilding the fireplace entirely to be about $3,000.00. St. John testified he suggested the more expensive job, yet, over his objections, the Durhams chose to modify the existing structure. St. John admitted, however, that the fireplace was eventually installed under his supervision.

We again note that the contract between Durham and St. John provided that all jobs must be approved by Durham before commencement, and that St. John would complete work in a "substantial and workmanlike manner."

The above recitation of facts shows that Durham offered abundant proof of damages. St. John did not dispute the fact that damages occurred, nor did he attempt to controvert Durham's claim that the weight of the foundation caused the damage.

St. John contends that by its answer to issue eleven the jury simply found that he never represented the fireplace work could be completed in a substantial and workmanlike manner. With its answer of "we do" to special issue one, however, the

jury found that St. John did represent to Durham that the materials and labor furnished by him would be "suitable for the purposes and quality intended and done in a substantial and workmanlike manner." Special issue eleven, then, inquired only as to the costs of repairs necessary to bring the work up to the standard represented, not whether a representation had been made. Moreover, although St. John testified he objected to the alternative chosen by Durham, he did not claim he told Durham it would not be successful. This testimony, without more, is not sufficient evidence that he did not represent the work could be completed in a "substantial and workmanlike manner," according to the contract.

■ In view of the absence of testimony contradicting Durham's evidence of damages caused by faulty construction, we find the jury's answer to special issue 11(2) was so against the great weight and preponderance of the evidence as to be manifestly unjust and wrong and requires reversal. *Lowery v. Berry,* 153 Tex. 411, 269 S.W.2d 795 (1954); *Nye v. W & L Company, Inc.,* 519 S.W.2d 142 (Tex. Civ. App.—Amarillo 1975, writ ref'd n.r.e.); *Coastal States Crude Gathering Co. v. Williams,* 476 S.W.2d 339 (Tex. Civ. App.—Corpus Christi 1971, writ ref'd n.r.e.); Rule 328, Texas Rules of Civil Procedure.

Our affirmance of Durham's factual sufficiency point requires reversal of that part of the judgment and remand of the cause for a new trial on the issues as herein provided. St. John's appeal, however, raises four major issues we feel should be reached here in the event the same questions arise upon retrial of the cause. The first issue is whether the contract between St. John and Durham was divisible or indivisible. The second is whether St. John should have been granted recovery over and against Durham for a judgment his subcontractor won against him. Third, we will discuss whether, under the evidence in this trial, Durham was a consumer under the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA) * and fourth, whether under the evidence in this trial, St. John was entitled to have Durham's judgment against him offset with his judgment against Durham before Durham's damages were trebled under the DTPA.

The trial court concluded as a matter of law that the contract between Durham and St. John to build and install cabinets was divisible from the rest of the remodeling contract. Although St. John does not raise a point of error challenging the trial court's conclusion, he contends in his brief that there was "no basis in law" to support the finding. We disagree.

The contract between Durham and St. John states "[a]ll work to be performed only as directed and agreed upon between owner and contractor. Contractor may offer suggestions as job progresses, however, these jobs must be approved by owner before such jobs are started." No specific projects, other than the broad remodeling effort, are mentioned.

■ The divisible or indivisible nature of a contract cannot be ascertained by any one test or rule of law. Determination of the issue depends primarily on the intention of the parties, the subject matter of the agreement, and the conduct of the parties. *Chapman v. Tyler Bank and Trust Company,* 396 S.W.2d 143, 146–47 (Tex. Civ. App. —Tyler 1965, writ ref'd n.r.e.). Moreover, "if there is a single assent to a whole transaction involving several things ... a contract is entire; but if there is a separate assent to each of the several things involved it is divisible." *Frankfurt Finance Co. v. Treadaway,* 159 S.W.2d 514, 516 (Tex. Civ. App.—Dallas 1942, writ ref'd w.o.m.); *Casey v. Oldham,* 248 S.W.2d 531, 534 (Tex. Civ. App.—Amarillo 1952, writ ref'd n.r.e.).

■ The language of the contract shows that the parties contemplated the contract would be divisible as to each project attempted. By its terms, the agreement required St. John to obtain Durham's consent before commencing any one job. There

---

* All citations are to Tex. Bus. & Com. Code Ann.   § 17.41–17.63 (Vernon Supp. 1982).

was a single agreement between the parties to remodel the house; but that agreement involved several separate agreements to do many things at different times. Further, the subject matter of the contract, major home remodeling, is by its nature susceptible of division and apportionment. In addition the evidence is that the parties by their conduct treated the contract as divisible, a circumstance which is given great weight. *Lone Star Gas Co. v. X-Ray Gas Co.,* 139 Tex. 546, 164 S.W.2d 504 (1942). The trial court was correct in finding the Durham-St. John contract divisible.

The second area of concern, encompassed in St. John's points of error one, two and three, is whether St. John was entitled to judgment over and against Durham for the $7,940.00 judgment Barker, his subcontractor, obtained against him for labor and materials used in building and installing cabinets in the Durham home, attorney fees, and interest. We believe under the evidence at this trial he was not entitled to such judgment.

The trial court refused St. John's plea for recovery over and against Durham, stating that such an issue was for the jury to decide. Upon submission of the special issues, the jury found that $3,300.00 would be necessary to complete the cabinets as St. John warranted they would be. Since this amount is well over 50% of the contract price, a finding of substantial performance was precluded, and Durham under the evidence at this trial could not be held liable on the contract for the cabinet work. *United States Pipe and Foundry Co. v. City of Waco,* 100 S.W.2d 1099, 1112 (Tex. Civ. App.), *aff'd,* 130 Tex. 126, 108 S.W.2d 432, *cert. denied,* 302 U.S. 749, 58 S.Ct. 266, 82 L.Ed. 579 (1937).

St. John urges us to find that, as a matter of law, he was entitled to recovery over and against Durham. Clearly, however, once Durham by proper pleadings denied liability and presented enough evidence to avoid a directed verdict, he was entitled to a jury determination of the liability issue. The fact that St. John failed to raise an issue of his liability to Barker and conse-

quently had a verdict directed against him could not deprive Durham of this right. We find St. John was not entitled to indemnity as a matter of law and overrule his points of error one through three.

By his fifth point of error, St. John claims Durham is not a "consumer" within the meaning of the DTPA because he never paid for the Barker-made cabinets. We disagree with this contention and overrule point of error five.

It is undisputed that Durham never paid St. John for the cabinets. St. John testified he went to Durham for payment after the cabinets were installed. When Durham indicated his dissatisfaction with the carpentry and refused to remit, St. John offered to have the cabinets taken out. Durham refused the offer and, at the time of trial, still had possession of the cabinets. At trial, St. John maintained he never billed Durham for the cabinets, but admitted he included Barker's bill to him in an invoice packet he delivered to Durham.

Durham had the burden, as plaintiff bringing the DTPA action, of proving he was a "consumer" within the meaning of the DTPA, § 17.45(4). *Farmers & Merchants Bank v. Ferguson,* 617 S.W.2d 918, 919 (Tex. 1981). Section 17.45(4) defines "consumer" as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." In this case, Durham sought to purchase from St. John his services as a contractor to oversee the building and installation of cabinets in his home. He contends at trial that St. John breached his express and implied warranty that the cabinets would be constructed in a substantial and workmanlike manner. Durham at this trial clearly met his burden of proving himself a "consumer" within the meaning of the DTPA. *Anderson v. Havins,* 595 S.W.2d 147, 155 (Tex. Civ. App.—Amarillo 1980, no writ).

The final issue demanding our attention is brought in St. John's sixth point of error. St. John contends the trial court erred in failing to set off the $3,300 Durham won on his sworn account before trebling damages.

Since our holding that the finding of the jury with respect to the fireplace was against the great weight and preponderance of the evidence will require a new trial, a full discussion of this point is not required. However, we point out that actual damages suffered by one claiming under DTPA section 17.50(b)(1) are determined by "the total loss sustained by the plaintiff as a result of the deceptive trade practices." *Smith v. Baldwin,* 611 S.W.2d 611, 617 (Tex. 1980). Unless, therefore, a claimant is awarded a net recovery over his opponent's claim, he is not entitled to treble damages. *Beeman v. Worrell,* 612 S.W.2d 953, 959 (Tex. Civ. App.—Dallas 1981, no writ).

The remainder of St. John's points of error deal with matters evidentiary in nature. These problems may not arise upon retrial, thus, we decline to deal with them here.

That portion of this action dealing with Barker's claim against St. John is severed and the portion of the trial court's judgment awarding Barker a judgment against St. John in the total sum of $7,940 plus interest from the date of the entry of the judgment at the rate of 9% per annum until paid is affirmed. The remainder of the judgment is reversed and the cause remanded for new trial, except that, since no complaint is made of the action of the trial court in rendering judgment for St. John against Durham in the sum of $11,974.02 and attorney fees of $5,180.00 that portion of the action shall be taken as established in such retrial. Tex. R. Civ. Pro. 434. Fifty (50%) percent of the costs of appeal are taxed against appellant H. Doyle St. John, d/b/a Doyle St. John Contractor, and fifty (50%) percent of such costs are taxed against appellee James D. Durham, Jr. Tex. R. Civ. P. 448.