**In re Douglas FERGUSON and Amber Ferguson, Debtors.**

**Max R. TARBOX, Trustee, Plaintiff,**

v.

**JOHN Q. HAMMONS COMPANY d/b/a Holiday Inn (Lubbock Plaza), Defendant.**

Bankruptcy No. 594–50545–7.
Adv. No. 594–5076.

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

June 12, 1995.

---

Becky M. Fesmire, Lubbock, TX, for trustee.

James L. Gorsuch, Gorsuch & Byrd, Lubbock, TX, for Hammons.

### MEMORANDUM OF OPINION ON CONTRACT

JOHN C. AKARD, Bankruptcy Judge.

Max R. Tarbox (Trustee), Trustee in Bankruptcy for Douglas Ferguson and Amber Ferguson (Debtors) seeks to recover for prepetition services rendered by Mr. Ferguson to the John Q. Hammons Company d/b/a Holiday Inn Lubbock Plaza (Hammons).[1]

---

**1.** This court has jurisdiction of this matter under 28 U.S.C. § 1334(b) and (d), 28 U.S.C. § 157(a),

The court finds that the Trustee should recover $11,945.27 from Hammons.[2]

## FACTS

On May 5, 1994, Mr. Ferguson d/b/a Fergusons made a proposal to Hammons as follows:

The Removal & Installation of
| | |
|---|---|
| 10,000' Bordering | $12,894.02 |
| Installation Cpt. on 69 Stairs | 345.00 |

The work was to be "completed in a substantial workmanlike manner for the sum of ... $13,239.02" with payment to be made upon completion to Shadow Hills National Bank. On May 3, 1994, the proposal was accepted by Hammons. After completing some of the work, the Debtors filed for relief under Chapter 7 of the Bankruptcy Code on July 27, 1994. Hammons was not listed as a creditor in the bankruptcy and did not become aware of the bankruptcy until about September 29, 1994.

The Trustee asserts that Mr. Ferguson completed the installation of the bordering and acknowledges that the stair installation was not done. The Trustee believes that the contract is divisible and that the Trustee should recover $12,894.02 for the work done. In the alternative, the Trustee claims that the cost of completion incurred by Hammons is unreasonably high.

Hammons acknowledges that the bordering was completed. It asserts that the contract is not divisible and that it is entitled to recover the $3,500.50 it paid another carpet installer to do the stairs. The last work done by Mr. Ferguson for Hammons was just prior to the bankruptcy filing on July 27, 1994. About ten days later, Hammons sought to locate Mr. Ferguson but was unsuccessful. Hammons contacted the bank which advised him to have someone else complete the job. It is Hammons' practice to get two or three bids before having work of this type done. Several bids were received before the job was initially awarded to Mr. Ferguson. At the time Hammons discovered that Mr. Ferguson was not going to complete the job, Hammons was anxious to have the work completed in order to meet deadlines established in converting the hotel to a Holiday Inn franchise. No bids for the completion were solicited. Julio Alvarado d/b/a Julian's Carpet Installation was called in to complete the work. His September 12, 1994 bill for the work was:

| | |
|---|---|
| Scaffold Rental | $ 200.00 |
| Take Up | 700.00 |
| Installation | 2,000.00 |
| 5-gal glue | 500.00 |
| Haul off trash | 150.00 |
| Total | $3,500.50 [3] |

Hammons believes it can deduct the $3,500.00 charged for completion from the $13,239.02 contract price and offered $9,739.02 [4] to the Trustee.

## ENTIRE OR DIVISIBLE CONTRACT

A divisible contract is one "which is in its nature and purposes susceptible of division and apportionment, having two or more parts in respect to matters and things contemplated and embraced by it, not necessarily dependent on each other nor intended by the parties to be." BLACK'S LAW DICTIONARY 479 (6th Ed.1990). "A contract is divisible when the performance by one party consists of several distinct and separate items and the price paid by the other party is apportioned to each item." *Johnson v. Walker*, 824 S.W.2d 184, 187 (Tex.App.—Fort Worth 1991, no writ); *Accord, Hamilton v. Texas Oil & Gas Corp.*, 648 S.W.2d 316, 320 (Tex.App.—El Paso 1982, writ ref'd n.r.e.) (citing *Chapman v. Tyler Bank & Trust Co.*, 396 S.W.2d 143 (Tex.Civ.App.—Tyler 1965,

---

and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(E), (K), and (O).

2. The testimony indicated that the Shadow Hills National Bank was asserting some claim to the proceeds of the contract in question. The bank was not made a party to these proceedings. This memorandum of opinion and the resulting judgment do not adjudicate any rights the bank may have against either party to this proceeding.

3. It appears that the total should have been $3,550.00.

4. Based upon Mr. Alvarado's bill this figure should be $9,738.52, however, Hammons is only seeking a $3,500.00 credit.

writ ref'd n.r.e.). No one test or rule of law is determinative of this question. *Hamilton,* 648 S.W.2d at 320. Determination of the issue depends primarily on the intention of the parties, the subject matter of the agreement, and the conduct of the parties. *Walker,* 824 S.W.2d at 187; *see also Chapman,* 396 S.W.2d at 146–47; *St. John v. Barker,* 638 S.W.2d 239, 243 (Tex.App.—Amarillo 1982), *aff'd as modified, Durham v. St. John,* 645 S.W.2d 261 (Tex.1983) (per curiam) (holding that the trial court should determine actual damages). Most courts find the intent of the parties as shown by the contract terms to be the most determinative factor in deciding whether the contract is divisible. *Lake LBJ Mun. Util. Dist. v. Coulson,* 771 S.W.2d 145, 153 (Tex.App.—Austin 1988) (citation omitted), *rev'd and remanded on other grounds,* 781 S.W.2d 594 (Tex.1989), *rev'd and remanded on other grounds,* 839 S.W.2d 880 (Tex.App.—Austin 1992); *King v. Whatley,* 236 S.W.2d 186, 191 (Tex.Civ.App.—Eastland 1951, writ ref'd n.r.e.).

■ If there is a single assent to a whole transaction involving several things, a contract is entire. If there is a separate assent to each of the several things involved, it is divisible. *St. John,* 638 S.W.2d at 243. Where the subject matter of the contract is divisible and the consideration is apportioned, these qualities are consistent with and indicative of a severable contract. However, they are not conclusive on that point. *King,* 236 S.W.2d at 191.

A case similar to the case at bar is *St. John v. Barker, supra.* In that case, St. John, a contractor, and Durham contracted to remodel Mr. Durham's house. The contract provided that Durham must approve all jobs before commencement, and that St. John would complete work in a "substantial and workmanlike manner." Subsequently, St. John subcontracted with Barker to build some cabinets. Durham was dissatisfied with the cabinets and refused to pay St. John. Consequently, St. John refused to pay Barker. The importance of this case is the treatment afforded the contract between St. John and Durham. 638 S.W.2d at 240–41.

On appeal, St. John challenged the trial court's finding that the contract between Durham and St. John to build and install cabinets was divisible from the rest of the remodeling contract. This argument was not raised as a point of error but he says in his brief that there was "no basis in law" to support the finding. The Court of Appeals disagreed with Durham's contention.

In its analysis, the court cited the same cases previously cited herein. In applying this authority, the court began its analysis by looking at the contract's language and held that "the language of the contract showed that the parties contemplated the contract would be divisible as to each project attempted." *Id.* at 243. Of importance to the court was the fact that St. John had to receive Durham's consent before starting any job. Though there was a single agreement, the appellate court found that it involved several separate agreements to do many things at different times. The court also found the subject matter of the contract important. It held that major home remodeling, by its very nature, is susceptible to division and apportionment. Additionally, the evidence showed that the parties, by their own conduct, treated the contract as divisible. *Id.* at 243–44.

The *King* court reached a different result. *King,* 236 S.W.2d at 186. The *King* decision represents the other side of the coin. The court found the contract at issue to be entire and not divisible. Whatley sued to recover on a written contract by which the Kings agreed to sell and Whatley agreed to buy a ranch and certain personal property, including cattle. Whatley sought to recover the real property and so much of the personal property as was available. Some of the personal property was alleged to have been disposed of. The Kings asserted in defense that the land was their homestead as to which no specific performance could be had; that the contract was entire and not severable and, therefore, no part of it was enforceable. The trial court sustained the homestead defense, but found that the title was in Whatley, including some of the personal property. *Id.* at 188.

For our purposes, we will only concern ourselves with the issue of divisibility of the contract. Of importance is that in the contract, separate prices and values were set for

each of the animals which were the Kings' personal property. The appellate court considered King's arguments that the contract was entire and not severable. King believed that, since the portion of the contract calling for the conveyance of the homestead is unenforceable, no part of it could be enforced. If the contract was entire, then the whole document failed. *Id.* at 191.

First the appellate court noted that the subject matter of the contract was divisible and that the consideration was apportioned. It stated that while these are qualities consistent with and indicative of a divisible contract, they are not conclusive. They stated that they would rely on the parties' intent. Additionally, they took the entire contract into account. *Id.* The court found it important to note that the contract involved a tract of land, certain cattle, and other personal property, all of which, according to the contract, was situated on the land. The court held that this constituted one ranch unit. Additionally, the agreement for the sale of all the property, the deed to the land, and the bill of sale for the personal property, were placed in escrow together. Based on these facts, the court found this to be an entire contract not capable of divisibility. *Id.* at 192.

The instant case deals with a construction contract. The contract called for Doug Ferguson to replace the bordering and to carpet the stairs. Based on its facts, it appears to resemble the *St. John* case. However, when one considers all the factors, the case is more similar to *King.* To make our determination, we look at the parties' intent and conduct and the subject matter of the agreement.

### Test for Divisibility of Contract

#### Intent of the Parties

In Ferguson's deposition, he admitted that the contract was one complete proposal. Ferguson Dep., at 15. He also stated that he expected to be paid with one check. *Id.* at 16. Additionally, he said that he had no intent to have two separate contracts. *Id.* Based on the testimony of Hammons employee, Joe Chavez, he also contemplated one job.

#### Subject Matter of the Agreement

The subject matter of the agreement appears very similar to the *St. John* contract. It has two separate items with itemized lists for each. However, this is not determinative of our decision.

#### Conduct of the Parties

Based on the statements and representations of the parties, they conducted themselves as though this was an entire contract. Both parties contemplated an entire contract through the type of payment they arranged, the way that the bids were prepared, and their testimony that it was entire. Based on the foregoing, the court finds that the contract was entire and not divisible.

### EFFECT OF BEING AN ENTIRE CONTRACT

Generally a party cannot recover on a contract without showing full performance of his part of its provisions. *Ardoin v. Royden,* 326 S.W.2d 14, 16 (Tex.Civ.App.—Fort Worth 1959), *rev'd on other grounds,* 160 Tex. 338, 331 S.W.2d 206 (1960). Any right to recovery for part performance is based on quantum meruit. *Id.* Quantum meruit means "as much as deserved." BLACK'S LAW DICTIONARY 1243 (6th ed. 1990). When a party fails to perform their part of a contract, the owner may take possession and complete the work himself. *Bledsoe v. Bowden,* 411 S.W.2d 59, 60 (Tex.Civ.App.—Fort Worth 1966, no writ). When the owner takes such an action, the owner may recover from the contractor any excess in the reasonable cost of completion over and above the unpaid portion of the contract price. *Id.*

The Trustee offered the testimony of Jeff Jackson, a salesman for Carpet World of Lubbock. He sells both residential and commercial carpet and employs independent contractors to do the installation. He was familiar with the stairs in question and stated that the labor involved would be approximately $230.00 and the glue would cost about $5.00 per gallon. He was unfamiliar with the cost of renting scaffolding, but thought that it would be helpful on this particular job. He testified that the installation price included

the cost of removing the old carpet and that generally there is no extra charge for hauling off the old carpet. He estimated that the cost of hauling off a whole houseful of carpet would not exceed $30.00.

Wayne Kemp, who has been in the carpet installation business in Lubbock since 1955, testified that his charge for a spiral staircase with 3-½ yards of carpet per stair would be $18.75 per stair. He would not charge extra for removal, hauling, glue or scaffold. This contract was for 69 stairs which would indicate a cost of $1,293.75. Mr. Ferguson testified that had he bid on the stairs alone, his bid would have been $500.00. He used the lower figure in the contract because it was part of a large contract.

Mr. Alvarado testified that the prices he charged represented standard prices in Lubbock. The court finds his testimony unconvincing. The court's conclusion is bolstered by the way Mr. Alvarado and Hammons handled this matter. Hammons did not secure any bids or price quotations in advance; it simply told Mr. Alvarado to do the work. This was a departure from Hammons' standard practice of securing competitive bids on work of this sort. Mr. Alvarado made a $50.00 calculation error which the court considers an indication that he was not concerned about his costs. Even though Mr. Alvarado's bill was ten times larger than Mr. Ferguson's bill, Hammons did not question it. Hammons took advantage of Mr. Alvarado by not pointing out the $50.00 mathematical error. Taken altogether, these factors lead the court to conclude that both Mr. Alvarado and Hammons knew that the price was inflated, but neither cared because they thought Ferguson would have to pay it.

## CONCLUSION

Considering the conflicting testimony on the cost to complete the contract, the court accepts Mr. Kemp's figure of $18.75 per stair as reasonable. Thus the court allows Hammons a credit of $1,293.75 on the $13,239.02 contract price and will award the Trustee a judgment against Hammons for $11,945.27.

5. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED.

All other relief requested by either party will be denied.

Judgment accordingly.[5]

R.BANKR.P. 7052. This Memorandum will be published.