### BRADY et al. v. GARRETT.
#### No. 2899.

Court of Civil Appeals of Texas. El Paso.
Nov. 10, 1933.

Rehearing Denied Dec. 7, 1933.

J. U. Sweeney, J. E. Quaid, and Isaacks & Lattner, all of El Paso, for appellants.

U. S. Goen and R. Neill Walshe, both of El Paso, for appellee.

PELPHREY, Chief Justice.

This is a suit by appellee to recover from appellants a 44-caliber, wooden-handled, Frontier model, Colt pistol which, it is agreed, was used by Pat Garrett, deceased, in the killing of Billy the Kid.

The following facts were found by the trial court: "I find that the plaintiff in said cause, Pauline Garrett, is the widow of Pat Garrett, deceased; that J. B. Brady is the duly qualified and acting Administrator of the estate of M. T. Powers, deceased; that on January 24th, 1933, the plaintiff, Pauline Garrett, filed this suit in the El Paso County Court at Law against J. B. Brady, Administrator, and others, for the possession of a certain 44-Caliber Colt Pistol; That during the year 1904 Pat Garrett gave to his wife, Pauline Garrett, the pistol in controversy; that thereafter Pat Garrett obtained said pistol from the said Pauline Garrett to be loaned to M. T. Powers of El Paso, Texas, for exhibition purposes only, in the Coney Island Saloon, owned and operated by the said M. T. Powers, in the City of El Paso, State of Texas; that said pistol was in fact loaned to M. T. Powers for exhibition purposes only; that the said M. T. Powers placed said pistol on exhibition in the Coney Island Saloon, and attached thereto a card which stated, in effect, that said pistol had been loaned to M. T. Powers 'For exhibition purposes only'; That thereafter and during the latter part of 1906, or the first part of 1907, Pat Garrett undertook to give said pistol to the said M. T. Powers, and thereafter the tag which contained writing to the effect that said pistol had been loaned to M. T. Powers, for exhibition purposes only, was removed from said pistol; that notice was never given to the said Pauline Garrett of the purported gift of said pistol by Pat Garrett to M. T. Powers; that the said Pauline Garrett, the plaintiff herein, never received notice of such purported gift, or that said tag had been removed from said pistol until after the death of the said M. T. Powers in 1931; That the Coney Island Saloon continued in existence until the year 1918, and the said pistol was kept on exhibition therein until the close of said saloon in 1918; that after the closing of said saloon in 1918, the said M. T. Powers kept said pistol at his residence in El Paso, Texas, until his death in 1931; That the said Pauline Garrett, Plaintiff herein, never at any time had notice of the assertion of any adverse claim to said pistol by the said M. T. Powers; that said pistol is now in the possession of the said J. B. Brady, the Administrator of the estate of M. T. Powers, deceased."

Upon these findings the court concluded as follows: "Upon the foregoing facts I conclude, as a matter of law, that the title to the pistol in controversy is in Pauline Garrett, Plaintiff herein, and that she should recover the possession thereof, from the said J. B. Brady, Administrator of the estate of M. T. Powers, deceased, and judgment is accordingly rendered."

From such judgment the defendants have appealed.

The following contentions, among others, are advanced by appellants: (1) That there was a sale of the pistol by Garrett to Powers; (2) that the gun became the property of Powers by virtue of his possession thereof from 1906 to 1927 without claim having been made on him therefor; (3) that Garrett having died in 1908 and Mrs. Garrett having permitted the gun to remain in Powers' possession, which possession was adverse to her claim, it was barred by the two, four, and ten year statutes of limitation; (4) that her claim was barred by her failure to demand possession of the gun for more than two years after the saloon closed and the gun ceased to be used for exhibition purposes.

With these contentions we cannot agree.

■■ It is undisputed that the gun went into the possession of Powers as a loan; that is, he acquired possession as bailee. The statute of limitations does not begin to run against the bailor's right so long as the relation of bailor and bailee continues, or, if such

relation is repudiated, until the bailor receives actual or constructive notice of the adverse claim by the bailee or by some one claiming through him. 6 C. J. § 35, p. 1107. Therefore, the claim of Mrs. Garrett would not be barred until the lapse of some statutory period after notice to her of an adverse claim to the pistol by Powers. The court found she had no such notice, and such finding is supported by evidence. The assignments raising the question of the statute of limitations are, therefore, overruled. Garrett, in view of the finding of the court that the pistol was the property of Mrs. Garrett, could not have legally sold the pistol to Powers.

In this state the husband cannot sell the separate personal property of the wife. McKay and Wife v. Treadwell, 8 Tex. 176; Coleman v. First Nat. Bank, 17 Tex. Civ. App. 132, 43 S. W. 938; Therriault v. Compere (Tex. Civ. App.) 47 S. W. 750; Walker v. Farmers' & Merchants' State Bank (Tex. Civ. App.) 146 S. W. 312; Givens v. Carter (Tex. Civ. App.) 146 S. W. 623; Hudspeth v. State, 54 Tex. Cr. R. 371, 112 S. W. 1069, 130 Am. St. Rep. 894.

Appellants requested a finding by the court as to the sale by Garrett to Powers, as testified to by the witness Warren. The requested finding was in conflict with the court's prior findings that the pistol had been given to Mrs. Garrett and that Garrett had undertaken to give it to Powers and was, therefore, properly refused. Garcia v. State (Tex. Civ. App.) 274 S. W. 319; Magnolia Petroleum Co. v. City of Port Arthur (Tex. Civ. App.) 209 S. W. 803.

The judgment is also attacked on the ground that our statutes do not permit a judgment in this character of case in the absence of evidence as to the value of the property sued for.

This same contention was made in the case of Avery v. Avery, 12 Tex. 54, 62 Am. Dec. 513. The court, in that case, said: "It is objected that the jury ought to have found the value of the slave sued for. In many cases it is essential to the interest of the parties, that this should be done. If the property sued for was beyond the reach of the jurisdiction of the Court, at the time of the verdict and judgment, nothing but compensation for it could be obtained, and the amount of that compensation should be determined by the jury. This would be necessary to the interest of both plaintiff and defendant; but where but one particular piece of property is sued for, and that is sued for in specie, and not in the alternative of damages, if the plaintiff establishes his right to the property, ample and complete justice can only be awarded by a judgment for the restitution of the property so claimed."

In that case, as here, plaintiff sued for specific property and had no alternative prayer for the value as damages.

It has also been held that an alternative judgment for the value of the property is for the benefit of the plaintiff and not of the defendant. Henry v. M. M. Moore, 1 White & W. Civ. Cas. Ct. App. § 880, p. 504.

The facts, as found by the trial court, being supported by the evidence, are binding upon us, and the judgment must be affirmed.

HIGGINS, J., did not sit in this case.

### On Motion for Rehearing.

PELPHREY, Chief Justice.

Appellants, in their motion for rehearing, insist that in our former opinion we did not take into consideration some of the important matters urged by them, and, for example, they refer to the plea of limitation and to the plea of laches.

As regards the question of limitation we think we very clearly passed upon that question and in disposing thereof we said: "The assignments raising the question of the statute of limitations are therefore overruled." We fail to see how we could have been more explicit.

The question of laches, while being included in appellants' proposition No. 3, along with the question of the two-year statute of limitations, was not stressed in their brief with the same force with which the question is here presented, and we felt that our discussion on the question of limitations was sufficient.

In order that there may be no doubt as to our position on the question of laches as applied to this case, we have decided to write specifically on that question.

"Laches" is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; such delay in enforcing one's rights as works disadvantage to another. 21 C. J. § 211, pp. 210, 211.

It is generally accepted that the doctrine of laches is, not like limitation, a mere matter of time, but is principally a question of the inequity of permitting a claim to be enforced; this inequity being founded on some change in the condition or relations of the property or the parties. Since lapse of time has a tendency to obscure evidence, and often makes it impossible to discover the truth, it is, of course, one of the elements to be considered by the court in applying laches to stale claims, but it is only one, and while important, it is not ordinarily the controlling

or most important one. Hence, it has been said, laches in legal significance is not mere delay, but delay that works a disadvantage to another. 10 R. C. L. § 143, p. 396.

On this question we find the following announcement in 21 C. J. § 219, pp. 223–225: "To constitute a defense, the delay must have been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity doubtful or impossible, as through loss, or obscuration of evidence of the transaction in issue, or there must have occurred in the meantime a change in conditions that would render it inequitable to enforce the right asserted, or, as commonly phrased, the delay must have worked injury, prejudice or disadvantage to defendant or others adversely interested, or plaintiff must have abandoned or waived his right, or acquiesced in the assertion or operation of the adverse right, or lost his own by estoppel; or sufficient time must have elapsed to create or justify a presumption against the existence or validity of plaintiff's right; or a presumption that if plaintiff was ever possessed of a right, it has been abandoned or waived or has been satisfied, or that in consequence of the delay the adverse party would be inequitably prejudiced by the enforcement of the right asserted. There are indeed cases in which the courts have apparently or avowedly applied the doctrine of stale demand in its strict sense, and have denied relief because of mere delay on the part of plaintiff in seeking to enforce his rights. Read in the light of the peculiar facts under consideration, however, as all judicial opinions must be read, such decisions may be explained and harmonized on one theory or another with the prevailing rule that mere delay does not of itself bar equitable relief."

In accord with the above rules, the mere lapse of time here would not alone prevent the action by appellee.

■ From the fact that the pistol came into the hands of Powers under a contract of bailment and that it was used for about fourteen years thereafter for the purposes for which it had been loaned to him, we do not feel that the delay here was such as to practically preclude the court from arriving at a safe conclusion as to the truth of the matter and doing equity therein; that there was such a change in conditions as would render it inequitable to enforce Mrs. Garrett's rights to the pistol in question; that the delay was not sufficient to indicate that she had abandoned her right to the pistol; and, in the absence of a showing that she had knowledge of an adverse claim by Powers, she could not be said to have acquiesced in his claim of ownership.

It is contended, however, by appellants that the record shows knowledge on the part of Pat Garrett of an adverse claim by Powers,

and that, he being Mrs. Garrett's agent, such knowledge should be and will be imputed to her.

■ The rule imputing notice is based upon the theory that it is the duty of the agent to communicate to his principal the knowledge possessed by him relating to the subject-matter of the agency, material to the principal's protection and interests, and the presumption that he has performed this duty. Mechem on Agency (2d Ed.) § 1815, p. 1399, and also upon the fiction of the legal identity of principal and agent. 2 C. J. § 542, pp. 859–862. This rule does not prevail where the conduct of the agent is such as to raise a clear presumption that he would not communicate the facts to his principal. 21 R. C. L. § 24, p. 843; 2 C. J. § 542, p. 863; Mechem on Agency, supra.

■ In the case at bar we find that Pat Garrett, conceding that his agency had not terminated at the time he attempted to give Powers the pistol, in so doing was acting adversely to the interest of Mrs. Garrett, and it certainly could not be presumed that he would advise her of the attempted gift by him in view of the fact that he had several years before given the pistol to her.

■ It is also well established that the question of laches is addressed to the sound discretion of the chancellor, and his decision will not be disturbed on appeal unless it is so clearly wrong as to amount to an abuse of discretion. 21 C. J. § 217, pp. 217–219; 10 R. C. L. § 146, p. 399.

We do not feel that, under the peculiar facts of this case, the trial court's decision should be disturbed.

The motion is accordingly overruled.

HIGGINS, J., did not sit in this case.