COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 THE STANLEY WORKS D/B/A
 STANLEY MECHANICS TOOLS,
  
                                    
 Appellant,
  
 v.
  
 WICHITA FALLS INDEPENDENT
 SCHOOL DISTRICT,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-11-00015-CV
  
                          Appeal from
  
 30th District Court
  
 of Wichita County,
 Texas
  
 (TC # 165,364-A)
 
 


O
P I N I O N

 

            The Stanley Works d/b/a Stanley
Mechanics Tools appeals from a judgment entered in favor of Wichita Falls
Independent School District.  We affirm
in part, reverse in part and remand to the trial court for entry of judgment in
accordance with this opinion.

FACTUAL SUMMARY

            In May 1990, the Wichita County
Commissioners Court adopted an order establishing guidelines and criteria for
the designation of reinvestment zones and entry into tax abatement agreements
pursuant to the Property Redevelopment and Tax Abatement Act contained in
Chapter 312 of the Texas Tax Code.  See Tex.Tax
Code Ann. §§ 312.001-312.403 (West 2008 and Supp. 2011).  In June 1994, Stanley entered into a written Tax
Abatement Agreement with Wichita County, Texas. 
WFISD became a party to the agreement in July 1994.  Under the Agreement, Stanley agreed to make
certain personal property additions and improvements to its tool manufacturing
facility in Wichita Falls, Texas.  The Agreement
provided that Stanley would relocate to Wichita Falls certain equipment and
processes from an existing Ohio facility. 
Stanley would also purchase additional equipment for the Wichita Falls
facility.  The parties contemplated that
the expansion would create an additional 100 jobs by the end of the expansion
period.

Attached to the tax abatement agreement is Exhibit B which describes the
three-phase project as follows:

Phase
I - Projected Timing - June through December 1994

Scope of this
phase will be the manufacture of ‘Mac’ Tool branded product, produced and
distributed via jobbers.  Ultimate
distribution is to the independent professional mechanics.  Manufacturing processes will include CNC
turning (rough and final), grinding, polishing, marking, swaging, broaching and
drilling.  Products to be manufactured
will include extensions, sockets, hex bits, wrenches and cold chisels.

 

Phase II -
Projected Timing - March 1995

 

Final steps of
closing down this Ohio manufacturing facility and absorbing all remaining
production operation in Texas.  Products
and processes will expand what is part of first phase.  Now it will include the manufacture of
adapters, magnetic sockets, speeders, ratchets, impact universals and sockets.

 

With the
completion of Phases I and II, we anticipate equipment having a value of
approximately $3,700,000 will have been moved to our Wichita Falls
facility.  In addition, we expect the
creation of approximately 170 new jobs; however, this will be offset by jobs
being relocated to other Texas locations, netting the Wichita Falls facility
approximately 100 jobs.

 

Phase III -
Project Timing - 1994

 

Major investment
in process equipment to produce 4” through 12” adjustable wrenches.  Investment of this magnitude will allow us to
increase capacity three times existing volume. 
This state of the art technology will allow us to become price
competitive in the worldwide market.  By
becoming more competitive in the worldwide market, this will assure our
continued growth in the volume of adjustable wrenches and expand our labor
force.

Wichita
County agreed to give Stanley declining ad valorem tax abatements on the
additions and improvements for two ten-year periods.[1]  The tax abatement for the Phase I and Phase
III improvements began on January 1, 1995 and continued for a period of ten
years.  The tax abatement for the Phase
II improvements began on January 1, 1996 and likewise continued for a period of
ten years.  The Wichita Appraisal
District (WAD) administered the tax abatement. 
Under the Agreement, Stanley was required to provide a certificate each
year containing a general description and cost of the personal property and
improvements added to the facility, and the number of jobs created since the
commencement of the improvements or the previous certificate.  Stanley had the right to protest any
appraisal or assessment of the facility and any improvements or tangible
personal property, and the tax abatement would be applied to the amount of
taxes finally determined to be due following resolution of a protest.

            The Tax Abatement Agreement provided
that if Stanley “fails to make the personal property additions and improvements
to the Premises which are described in this Agreement as Phase I, II, or III,
respectively, [Stanley] shall repay all property tax revenue lost by the County
as a result of this Agreement insofar as such lost tax revenue relates to the
additions and improvements described in the particular Phase, subject to any
and all lawful offsets, settlements, deductions or credits to which [Stanley]
may otherwise be entitled; provided, however, the failure to make the additions
and improvements in any particular Phase shall not adversely affect the tax
abatement provided for herein with respect to any other Phase.”

In 1994, Stanley created $1,969,108 in personal property additions to its
Wichita Falls facility attributable to Phases I and III.  In 1995, it made $1,352,608 of personal
property additions to its Wichita Falls facility attributable to Phase II.  From 1995 through 2001, Wichita County and
WFISD abated $220,087.54 of ad valorem tax on Stanley’s personal property that
would have been owed by Stanley in the absence of the Tax Abatement
Agreement.  After 2001, Stanley stopped
seeking tax exemptions and made no further personal property additions under
the Agreement.  In 2002, Stanley moved
its tool manufacturing operations out of Wichita County.[2]

On August 28, 2003, WFISD notified Stanley by letter that it had failed
to make all of the personal property additions to its Wichita Falls facility as
required by the Agreement, and consequently, it was obligated to pay all ad
valorem tax revenue lost as a result of the Tax Abatement Agreement.[3]  Stanley disagreed in a letter from its
assistant general counsel.  WFISD sent a
letter to Stanley on May 24, 2006 demanding payment of the ad valorem tax lost
under the Tax Abatement Agreement. 
Stanley did not make payment and WFISD filed suit alleging breach of the
Tax Abatement Agreement and seeking recovery of the lost ad valorem tax revenue
as damages.  Stanley filed a general
denial and additionally asserted that WFISD’s claims were barred by Section
33.05 of the Texas Tax Code, laches, and estoppel.  

Following a bench trial,  the court
awarded judgment in favor of WFISD in the sum of $220,087.54, pre-judgment
interest in the sum of $74,251.11, and attorney’s fees in the sum of $44,017.50.  The trial court entered written findings of
fact and conclusions of law.  

TAX CODE SECTION 33.05(A)(1)

In
its first issue, Stanley contends the suit is barred by the applicable four
year statute of limitations provided by Section 33.05(a)(1) of the Texas Tax
Code.  The trial court concluded that
WFISD’s suit is for breach of contract and it is not barred by limitations or
laches.  We
review de novo the trial court’s
legal conclusions based on the findings of fact to determine their correctness.  BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  If we determine a conclusion of law is
erroneous but the trial court nevertheless rendered a proper judgment, the
erroneous conclusion does not require reversal.  Id.

Section 33.05(a)(1) provides that: “Personal property may not be seized
and a suit may not be filed:  (1) to
collect a tax on personal property that has been delinquent more than four
years.”  Tex.Tax Code Ann. § 33.05(a)(1)(West 2008).  Stanley asserts that the Tax Abatement Agreement
required that it make the improvements under Phases I and III by 1994 and the
improvements under Phase II by 1995, and therefore, any breach of the Agreement
occurred in 1994 and/or 1995.  Stanley
reasons that “[i]f it were true that Stanley failed to comply with the
Abatement Agreement in 1994 and/or 1995, then any unpaid personal property
taxes necessarily would have become
delinquent ‘more than four years’ before this suit was filed in November 2006.”  [Emphasis in original.]  WFISD responds that Section 33.05 is
inapplicable because the statute only applies to suits to collect delinquent
taxes and it did not sue Stanley to collect delinquent taxes, but rather it sought
damages for Stanley’s breach of the Tax Abatement Agreement.  Whether Section 33.05 applies to a suit
alleging breach of a Tax Abatement Agreement is an issue of first impression.  Further, the parties’ arguments raise an
issue of statutory construction.  

Statutory construction is a legal question that we review de novo in order to ascertain and give
effect to the Legislature’s intent.  F.F.P. Operating Partners, L.P. v. Duenez,
237 S.W.3d 680, 683 (Tex. 2007).  When
construing a statute, we begin with its language.  State v.
Shumake, 199 S.W.3d 279, 284 (Tex. 2006).  We must interpret the statute according to the
plain meaning of the language used, and must read the statute as a whole
without giving effect to certain provisions at the expense of others.  City of
San Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003).  Words shall be given their ordinary meaning
unless a word is connected with and used with reference to a particular trade,
subject matter, or is used as a word of art, and in such a case, the word shall
have the meaning given by experts in the particular trade, subject matter, or
art.  Tex.Gov’t
Code Ann. § 312.002 (West 2005).  Each
word, phrase, or expression must be read as if it were deliberately chosen, and
we will presume that words excluded from a provision were excluded for a
purpose.  Gables Realty Ltd. Partnership v. Travis Central Appraisal District,
81 S.W.3d 869, 873 (Tex.App.--Austin 2002, pet. denied).  We may consider other matters in ascertaining
legislative intent, including the objective of the law, its history, and the
consequences of a particular construction.  See Tex.Gov’t Code Ann. § 311.023(1), (3),
(5); Shumake, 199 S.W.3d at 284.

The application of Section 33.05 is restricted by its terms to a suit to
collect a delinquent tax on personal property. 
The Tax Code does not define the term “delinquent.’  Its ordinary meaning is a past due or
unperformed obligation.  Black’s Law Dictionary 493 (9th Ed.
2009).  Section 31.02 of the Tax Code,
which is entitled “Delinquency Date,” provides that “taxes are due on receipt
of the tax bill and are delinquent if not paid before February 1 of the year
following the year in which imposed.”  Tex.Tax Code Ann. § 31.02(a)(1).[4]  Citing Section 31.01(g), Stanley argues that
the failure to send a tax bill does not affect the validity of the tax, and
therefore, the taxes sought to be recovered in this case would have been due on
February 1 of each year following the applicable tax year.  See
Tex.Tax Code Ann. § 31.01(g)(West
2008 and Supp. 2011)(“Except as provided by Subsection (f), failure to send or
receive the tax bill required by this section, . . . does not affect the
validity of the tax, penalty, or interest, the due date, the existence of a tax
lien, or any procedure instituted to collect a tax.”).[5]


The terms of the Agreement required Stanley to repay all lost property
tax revenue if it failed to make the personal property additions and
improvements under Phases I, II, and III. 
By its suit, WFISD sought to recover the amount of taxes which had been abated
by virtue of the Tax Abatement Agreement from 1995 through 2001 because it
contended, and the trial court found, that Stanley breached the Agreement by
failing to make all of the required improvements and additions.  It is undisputed that Wichita County and
WFISD did not impose the abated taxes during either ten-year abatement period.  Consequently, the abated taxes were not due
on February 1 of each tax applicable tax year and the taxes did not become
delinquent.  We conclude that WFISD’s
suit is not a suit to collect delinquent taxes, and therefore, Section 33.05’s
limitations period is inapplicable.  We
overrule Issue One.

LACHES

            In its second issue, Stanley argues
that WFISD’s claims are barred by laches as a matter of law.[6]

Waiver

            WFISD maintains that Stanley waived
this issue because it failed to request findings on the essential elements of
this affirmative defense.  Laches is an
affirmative defense.  Tex.R.Civ.P. 94.  Therefore, it was Stanley’s burden to plead,
prove, and secure findings on its defense. 
Woods v. William M. Mercer, Inc.,
769 S.W.2d 515, 517 (Tex. 1988).  A party
asserting an affirmative defense in a trial before the court must request
findings in support of the defense to avoid waiver.  Cooper
v. Cochran, 288 S.W.3d 522, 531 (Tex.App.--Dallas 2009, no pet.); Cotten v. Weatherford Bancshares, Inc.,
187 S.W.3d 687, 708 (Tex.App.--Fort Worth 2006, pet. denied).  If the trial court’s findings do not include
any of the elements of the defense asserted, the party must specifically
request additional findings relevant to the defense.  Cooper,
288 S.W.3d at 531.  The trial court’s
findings of fact did not include any elements of laches, but Stanley made a
request for amended or additional findings that WFISD had the legal or
equitable right to assert the claims made in this suit, it unreasonably delayed
asserting its claims for almost twelve years after the alleged breach, and the
delay impaired Stanley’s ability to defend against the claim or to ascertain
the true facts.  We find that Stanley
preserved the issue.

Elements of Laches

Generally, laches is an affirmative defense comprised of two elements:
(1) a party’s unreasonable delay in asserting a legal or equitable right; and
(2) a good faith and detrimental change of position due to the delay.  Rogers
v. Ricane Enterprises, Inc., 772 S.W.2d 76, 80 (Tex. 1989); In the Matter of the Estate of Romancik,
281 S.W.3d 592, 597 (Tex.App.--El Paso 2008, no pet.).

Standard of Review

Findings of fact in a bench trial have the same force and dignity as a
jury’s verdict upon questions and are reviewed for legal and factual
sufficiency of the evidence by the same standards.  Ortiz v.
Jones, 917 S.W.2d 770, 772 (Tex. 1996); Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  The findings are not conclusive when, as in
this case, a complete reporter’s record appears in the record.  Tierra
Sol Joint Venture v. City of El Paso, 311 S.W.3d 492, 498 (Tex.App.--El
Paso 2009, no pet.).  We review the trial
court’s legal conclusions de novo.  BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).

When a party attacks the legal sufficiency of an adverse finding on an
issue on which it has the burden of proof, it must demonstrate on appeal that
the evidence establishes, as a matter of law, all vital facts in support of the
issue.  Dow Chemical Company v. Francis, 46 S.W.3d 237, 241 (Tex. 2001); Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989).  The reviewing
court first examines the record for evidence that supports the finding, while
ignoring all evidence to the contrary.  Dow Chemical, 46 S.W.3d at 241.  If there is no evidence to support the
finding, the reviewing court will then examine the entire record to determine
if the contrary proposition is established as a matter of law.  Id.  To prevail on appeal, Stanley must
demonstrate that the evidence conclusively established all vital facts in
support of the affirmative defense of laches.

Review of the Evidence

It is unnecessary to review the first element because Stanley failed to conclusively
establish the second element of its laches defense.  Stanley’s sole argument is that evidence was
lost and “witnesses had scattered” due to the passage of time.  Stanley does not argue that it made a good
faith and detrimental change of position due to the delay.  It instead contends that when the delay is
such that the defendant’s ability to defend against the claim is impaired, then
the plaintiff’s claim should be barred.  In
support of its position, Stanley cites De
Benavides v. Warren, 674 S.W.2d 353, 362 (Tex.App.--San Antonio 1984, writ
ref’d n.r.e.), which in turn cited Pearson
v. American Fidelity & Casualty Company, 321 S.W.2d 620
(Tex.Civ.App.--Amarillo 1959, writ ref’d n.r.e.)[7]
and Brady v. Garrett, 66 S.W.2d 502
(Tex.Civ.App. --El Paso 1933, writ dism’d).[8]  Assuming for the sake of argument that
evidence of an impaired ability to defend can satisfy the second element, we
conclude that Stanley failed to prove this element as a matter of law. 

Lisa Stephens-Musick has been the deputy chief appraiser for the Wichita
Appraisal District since 1999 and she is the custodian of the appraisal
district’s records.  The evidence showed
that WAD, in accordance with its records retention plan, destroyed the original
renditions of personal property submitted by Stanley five years after each
applicable tax year.  Stanley did not
offer any evidence to explain why it did not have copies of the renditions it had
filed.  Under the Agreement, Stanley had
the right to protest any appraisal of the personal property, but there is no
evidence that Stanley ever protested any of the valuations for the tax years in
question.  One inference to be drawn from
this evidence is that Stanley accepted the valuations at the time they were
made.  Stanley does not direct our
attention to where in the record it established that witnesses could not be
located due to the delay nor is there any evidence indicating the substance of
the witnesses’ expected testimony.  Stanley’s
bare claims that the renditions had been destroyed and witnesses had scattered
do not conclusively prove that Stanley’s ability to defend was impaired or that
it made a good faith and detrimental change of position as a result of the
delay.  Issue Two is overruled.  




 

QUASI-ESTOPPEL

In its third issue, Stanley contends that WFISD’s claims are barred by
quasi-estoppel as a matter of law.[9]  Quasi-estoppel precludes a party from
asserting, to another’s disadvantage, a right inconsistent with a position
previously taken.  Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 864
(Tex. 2000).  The doctrine applies when
it would be unconscionable to allow a person to maintain a position
inconsistent with one to which he acquiesced, or from which he accepted a
benefit.  Id.  

Waiver

WFISD maintains that Stanley waived this issue because it failed to
request findings on the essential elements of this affirmative defense.  Quasi-estoppel is an affirmative
defense.  Clark v. Cotten Schmidt, L.L.P., 327 S.W.3d 765, 770 (Tex.App.--Fort
Worth 2010, no pet.);  Tex.R.Civ.P. 94.  Therefore, it was Stanley’s burden to plead,
prove, and secure findings on its defense. 
Woods v. William M. Mercer, Inc.,
769 S.W.2d 515, 517 (Tex. 1988).  The
trial court’s findings of fact did not address any elements of quasi-estoppel, and
Stanley’s request for amended or additional findings did not include the
elements of this defense.  Consequently,
Stanley waived this issue.  Issue Three
is overruled.

DIVISIBLE CONTRACT AND LEGAL SUFFICIENCY

            In its fourth and fifth issues,
Stanley contends that the Tax Abatement Agreement is a divisible contract and
WFISD failed to prove that Stanley did not comply with its obligations in
Phases I, II, or III and it failed to prove the amount of lost tax revenue
related to the additions and improvements in each Phase.




 

Standard of Review and Relevant Law

In construing a contract, a court must ascertain the true intentions of
the parties as expressed in the writing itself.  Italian
Cowboy Partners, Ltd. v. Prudential Insurance Company of America, 341
S.W.3d 323, 333 (Tex. 2011); J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).  In identifying the parties’ intent, “we must
examine and consider the entire writing in an effort to harmonize and give
effect to all the provisions of the contract so that none will be rendered
meaningless.”  Italian Cowboy, 341 S.W.3d at 333, quoting J.M. Davidson, 128 S.W3d at 229.  We begin this analysis with the contract’s
express language.  Italian Cowboy, 341 S.W.3d at 333. 
If the written instrument is so worded that it can be given a certain or
definite legal meaning or interpretation, then it is not ambiguous and the
court will construe the contract as a matter of law.  Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  If, on the other hand, the contract is subject
to two or more reasonable interpretations after applying the pertinent rules of
construction, the contract is ambiguous, creating a fact issue on the parties’
intent.  J.M. Davidson, 128 S.W.3d at 229.  In such a case, a court may consider the
parties’ interpretation and admit extraneous evidence to determine the true
meaning of the instrument.  Italian Cowboy, 341 S.W.3d at 333-34.

The divisible or indivisible nature of a contract cannot be ascertained
by any one test or rule of law.  Johnson v. Walker, 824 S.W.2d 184, 187
(Tex.App.--Fort Worth 1991, writ denied); St.
John v. Barker, 638 S.W.2d 239, 243 (Tex.App.--Amarillo 1982), aff’d, 645 S.W.2d 261 (Tex. 1983).  Determination of the issue depends primarily
on the intention of the parties, the subject matter of the agreement, and the
conduct of the parties.  Johnson, 824 S.W.2d at 187; St. John, 638 S.W.2d at 243.  If there is a single assent to a whole
transaction involving several things, a contract is entire, but if there is a
separate assent to each of the several things involved, it is divisible.  Johnson,
824 S.W.2d at 187; St. John, 638
S.W.2d at 243.  A contract is divisible
when the performance by one party consists of several distinct and separate
items and the price paid by the other party is apportioned to each item.  Johnson,
824 S.W.2d at 187; Hamilton v. Texas Oil
& Gas Corporation, 648 S.W.2d 316, 320 (Tex.App.--El Paso 1982, writ
ref’d n.r.e.), disapproved on other
grounds, Valence Operating Company v.
Dorsett, 164 S.W.3d 656, (Tex. 2005).

The Intention of the Parties

We begin by examining the intent of the parties as expressed in the
contract.  In support of its argument
that the contract is divisible into three parts, Stanley first focuses on the
language found in Section 2.1 of the Tax Abatement Agreement that:  “The improvements contemplated by [Stanley]
will consist of 3 Phases as more fully described in the attached Exhibit B.”  Phase I was projected to take place in June
through December 1994 and involved the manufacture of “Mac” Tool branded
products.  The description of Phase I
does not make any reference to personal property improvements or additions.  During Phase II, which was projected to occur
in March 1995, Stanley would close down its Ohio facility and absorb all
remaining production in the Wichita Falls facility.  Exhibit B further described Phase II as an
expansion of Phase I and it stated that with the completion of Phases I and II,
Stanley anticipated that equipment with a value of approximately $3.7 million
would have been moved to its Wichita Falls facility.  Phase III was expected to take place in 1994
and would involve a “[m]ajor investment in process equipment” to produce
adjustable wrenches.  Stanley anticipated
that the investment in Phase III would allow it to increase capacity three
times the existing volume.  Section 4.4
of the Agreement provides the strongest indication that the parties intended to
create a divisible contract.  That
section provides, in relevant part, that:

If [Stanley]
fails to make the personal property additions and improvements to the Premises
which are described in this Agreement as Phase I, II, or III, respectively,
[Stanley] shall repay all property tax revenue lost by the County as a result
of this Agreement insofar as such lost tax revenue relates to the additions and
improvements described in the particular Phase, subject to any and all lawful
offsets, settlements, deductions or credits to which [Stanley] may otherwise be
entitled; provided, however, the failure to make the additions and improvements
in any particular Phase shall not adversely affect the tax abatement provided
for herein with respect to any other Phase. 

 

Section 4.4
plainly contemplates that the additions and improvements would be assigned to
the relevant phase and the failure to accomplish one phase would not result in
a loss of the tax abatement due under another phase.  

WFISD argues that there are other provisions in the Agreement which
reflect that the parties intended to create an indivisible contract.  First, the Agreement does not provide for a
separate tax abatement period for each Phase. 
Section 3.1(a) and (b) of the Agreement provides for only two abatement
periods:  there is a ten-year abatement
period for the Phase I and III improvements (January 1, 1995 through January 1,
2005) and another for the Phase II improvements (January 1, 1996 through
January 1, 2006).  One reasonable
interpretation of Section 3.1 is that the parties agreed to create only two
abatement periods because Phases I and III were intended to begin in 1994 and
Phase II would not commence until 1995.  The
creation of only two abatement periods does not reflect an intent for the
contract to be indivisible.

WFISD also points to Section 5.1 of the Agreement as evidence that the
agreement is indivisible.  Section 5.1
addresses the sale, assignment, or lease of the property in question.  That section provides that the tax abatement
would “vest in [Stanley] upon substantial completion of the personal property
additions and improvements described in Section 2.1 . . .” but the tax
abatement was not “assignable to any new owner or lessee of all or any portion
of the Premises without the prior written approval of the County.”  WFISD is correct that the section does not
provide that the tax abatement would vest upon substantial completion of the
additions and improvements described in each phase.  It is logical for the parties to agree that
the tax abatement would not be assignable unless Stanley had substantially
completed the entire undertaking.  We do
not read this provision as evidencing an intention to create an indivisible
contract.

After reading the entire Agreement, we conclude that the parties intended
to create a divisible contract.  Any
other conclusion would render Section 4.4 meaningless.

Legal Sufficiency Standard of Review

            On appeal, a legal sufficiency or “no
evidence” challenge will be sustained if the party suffering the adverse
decision at trial shows:  (1) the
complete absence of a vital fact; (2) the court is barred by rules of law or
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a scintilla; or
(4) the evidences establishes conclusively the opposite of the vital fact.  City of
Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005); El Paso Independent School District v. Pabon, 214 S.W.3d 37, 41 (Tex.App.--El
Paso 2006, no pet.).  When conducting a
legal sufficiency review, we must view the evidence in the light favorable to
the verdict, crediting favorable evidence if a reasonable factfinder could, and
disregarding contrary evidence unless a reasonable factfinder could not.  City of
Keller, 168 S.W.3d at 830.  The final
test for legal sufficiency must always be whether the evidence at trial would
enable reasonable and fair-minded people to reach the verdict under review.  City of
Keller, 168 S.W.3d at 827.

Failure to Perform under Phases I and II

            The trial court concluded that in
Phases I and II, Stanley was to move equipment valued at approximately
$3,700,000 to its Wichita Falls facility for the manufacture of extensions,
sockets, hex bits, wrenches, cold chisels, adapters, magnetic sockets,
speeders, ratchets, and impact universals. 
WFISD introduced evidence that in 1994 Stanley made $1,969,108 of
personal property additions to its Wichita Falls facility attributable to
Phases I and III.  Lisa Stephens-Musick,
the custodian of the appraisal district’s records, testified that Phases I and
III were included together in a single abatement account while Phase II was in
a second account.  Consequently, the personal
property additions attributable strictly to Phase I are not separated from
Phase III.  In 1995, Stanley made
$1,352,608 of personal property additions to its Wichita Falls facility
attributable to Phase II.  Given that the
total value of personal property additions attributable to all three phases was
$3, 321,716, the evidence is legally sufficient to show that Stanley failed to
perform its obligations under Phases I and II. 


Failure to Perform under Phase III

Phase III required Stanley to make a major investment in process
equipment to produce adjustable wrenches. 
There is no evidence that Stanley failed to fulfill its obligation under
Phase III.

Amount of the Recovery

The evidence showed that WFISD and Wichita County abated a total of
$220,087.54 of ad valorem tax on Stanley’s personal property that would have
been owed but for the Tax Abatement Agreement. 
This figure included the abated taxes related to all three phases
because the Phase I personal property additions were not separated from the
Phase III additions.  Under Section 4.4
of the Agreement, WFISD is only entitled to recover the lost property tax
revenue related to the personal property additions and improvements made under
Phases I and II.  It is not entitled to
recover the taxes abated for the improvements and additions made under Phase
III.

With respect to the Phase II improvements and additions, the evidence
showed that from 1995 to 2001 Stanley would have paid $69,776.78 to WFISD and
$18,149.73 to Wichita County for a total of $87,926.51 in abated taxes.  Thus, the evidence is legally sufficient to
support an award of damages in this amount.

WFISD had the burden to prove the amount of taxes abated for the
improvements and additions made under Phase I. 
The evidence does not show the amount of taxes abated for the
improvements and additions attributable to Phase I because the appraisal
district created a single account for Phases I and III.  The evidence shows that Stanley would have
paid taxes in the amount of $104,478.28 to WFISD and $27,682.75 to Wichita
County but these amounts are a combination of the taxes abated under Phases I
and III.  It is impossible to tell what
personal property additions and improvements related only to Phase I and there
is no evidence that all of the additions related to both Phases.  We conclude that the evidence is legally
insufficient to support an award of damages for the full amount of taxes abated
under Phases I and III.  To this extent,
Issues Four and Five are sustained.

ADDITIONAL OR AMENDED FINDINGS OF FACT

            In the portion of its brief listing
the issues presented by the appeal, Stanley includes a seventh issue which asks
whether the trial court erred in failing to make Stanley’s requested additional
or amended findings of fact and conclusions of law.  The brief does not include any argument or
authorities in support of this issue. 
Consequently, we find that the issue has been waived because it has been
inadequately briefed.  See Tex.R.App.P.
38.1(i); Ashley Furniture Industries Inc.
ex rel. RBLS Inc. v. Law Office of David Pierce, 311 S.W.3d 595, 597
(Tex.App.--El Paso 2010, no pet.).

ATTORNEY’S FEES

            In its eighth issue, Stanley
challenges the award of attorney’s fees. 
First, Stanley asserts that WFISD is not entitled to any attorney’s fees
because it should take nothing on its breach of contract claim.  This argument is without merit because we
have overruled Issues One through Three and we have concluded in Issues Four
and Five that WFISD sustained its burden of proving that Stanley breached the
Tax Abatement Agreement by failing to fully perform Phases I and II.  Second, Stanley contends that the award of
appellate attorney’s fees is erroneous because the award is not conditioned on
Stanley’s appeal being unsuccessful. 
WFISD concedes that Stanley is correct regarding the award of appellate
attorney’s fees.  Accordingly, we sustain
this part of Issue Eight.  See A.G. Edwards & Sons, Inc. v. Beyer,
235 S.W.3d 704, 707 n.1 (Tex. 2007); Gilbert
v. City of El Paso, 327 S.W.3d 332, 337 (Tex.App.--El Paso 2010, no pet.).

DENIAL OF MOTION FOR SUMMARY JUDGMENT

            In its final issue, Stanley contends
that the trial court erred by denying its motion for summary judgment.  Stanley acknowledges that this issue cannot
be sustained under current Texas law.  See e.g., Horton v. Horton, 965 S.W.2d
78, 88 (Tex.App.--Fort Worth 1998, no pet.)(stating rule that where a motion
for summary judgment is denied by the trial judge and the case is tried on its
merits, the order denying the motion for summary judgment is not reviewable on
appeal); Gem Homes, Inc. v. Contreras,
861 S.W.2d 449, 453 (Tex.App.--El Paso 1993, writ denied)(same).  Stanley states that it is raising the issue
in good faith in order to preserve its contention that the Texas Supreme Court
should overrule current law forbidding review of a trial court’s order denying
a motion for summary judgment after the case is tried on the merits.  Issue Nine is overruled.

            Having sustained Issues Four and
Five in part, we reverse that portion of the judgment awarding WFISD damages in
the amount of $220,087.54 and pre-judgment interest in the sum of $74,251.11.  Having sustained Issue Eight in part, we reverse
that portion of the judgment awarding appellate attorney’s fees without making
it contingent on an unsuccessful appeal by Stanley.  Having overruled the other issues, we affirm
the remaining portion of the judgment.  We
remand the cause to the trial court for entry of judgment in accordance with
this opinion.

 

 

April 25, 2012                                     ________________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 











[1]  The abatement began at 100 percent the first
year of the abatement period and declined by 10 percent each year. 

 





[2]  Stanley states in its brief there is no
evidence to support the trial court’s finding that Stanley left Wichita County
in 2002, but the record reflects that counsel submitted a portion of Lisa
Stephens-Musick’s deposition to support an objection to her testimony.  Stephens-Musick testified that “They closed
down their facility during the term of the abatement agreement.” 

 





[3]  On June 20, 2005, WFISD and Wichita County
entered into an interlocal collection agreement whereby Wichita County
appointed WFISD as its agent to pursue collection against Stanley and to file
suit to enforce the Tax Abatement Agreement. 





[4]  There are exceptions to this provision which
do not affect our analysis and are inapplicable here.  See
Tex.Tax Code Ann. §
31.02(b)(providing the delinquency date for an eligible person serving on
active duty in any branch of the United States armed forces); Tex.Tax Code Ann. § 31.03 (providing
the delinquency date for a person who makes a split payment of taxes); Tex.Tax Code Ann. § 31.04 (providing
for the postponement of the delinquency date).





[5]  Under subsection (f), a collector may provide
that a tax bill not be sent until the total amount of unpaid taxes the
collector collects on the property for all taxing units the collector serves is
$15 or more.  Tex.Tax Code Ann. § 31.01(f).

 





[6]  Stanley asserts in Issue Six that it
conclusively established that WFISD’s suit is barred by the statute of
limitations, laches, and estoppel.  Our
discussion of Issue Two includes the portion of Issue Six addressing the affirmative
defense of laches.





[7]  In Pearson,
321 S.W.2d at 622, the Amarillo Court of Civil Appeals stated that:  “Laches is not mere delay in bringing an
action, but each delay working disadvantage to another, and operates as
estoppel against assertion of a right only when a party, knowing his rights,
takes no steps to enforce them until condition of other party has, in good
faith, become so changed that he cannot be restored to former state.”

 





[8]  In Brady, the Eighth Court of Civil Appeals
stated that “laches in legal significance is not mere delay, but delay that
works a disadvantage to another.”  Brady, 66 S.W.2d at 505.

 





[9]  Stanley asserts in Issue Six that it
conclusively established that WFISD’s suit is barred by the statute of
limitations, laches, and estoppel.  Our
discussion of Issue Three includes the portion of Issue Six addressing the
affirmative defense of quasi-estoppel.